After advisement, the following opinions were delivered :
By the Chief Justice.
The object of the special pleas is to put on the récord the question of fact, whether or not the general banking law of 1838, was enacted by a two-third *vote, within the ninth [ *608 ] section of the seventh article of the constitution ; and if not so passed, whether it can be upheld as a valid statute.
All the pleas are defective in point of form, and even if the principle up-, on which the pleader has sought to place the defence should be conceded as conclusive in his favor, they are in other ■ respects bad in point of substance ; but as no such questions have been raised by the plaintiff, according to the brief submitted, it is unnecessary to examine them. Both parties seem to desire that the defence should be met on the constitutional ground.
In the cases already decided in this court and the court for the correction of errors, though the question whether it is practicable for the defendant to avail himself of this defence, by setting up the fact that the bill did not receive the assent of two-thirds, within the constitutional provision, was alluded to, no definitive opinions were expressed. Thomas v. Dakin, 22 Wendell, 112 ; Warner & Ray v. Beers, and Blander v. Stevens, 23 Wendell, 103. In the first case, the only one argued before us, it was conceded by the counsel on both sides that the court must assume, nothing appearing on the record to the contrary, that the law was passed by the requisite constitutional vote and we entertained no doubt of the correctness of this view. If we had felt justified in taking official cognizance of the fact otherwise, the *464 printed statute book to the contrary notwithstanding, the result of our judgment in that cause would have been different. In the latter cases, the > Chancellor concurred with this court, that on the demurrer interposed, we could not look beyond the statute book ; in other words, that the court were bound to assume, for the purpose of the decision, that every law there published was to be deemed constitutionally enacted. He reserved himself upon the question, whether the court could, in any form, institute an inquiry into the mode in which a law signed by the governor, and duly certified by the secretary of state, was passed. The President, and Senator Verplanck, the only two other members delivering opinions, in which [ *609 ] allusion is made to this point, also reserved themselves, intimating, however, a doubt whether an inquiry could be instituted beyond the record of the law.
The Revised Statutes, vol. 1, p. 143, regulating the mode of enactment and publication of the laws, provide (§ 3) that no bill shall be deemed to have been passed by the assent of two-thirds, unless so certified by the presiding officer of each house. The governor is also required to endorse his approval on all bills passed, except those passed notwithstanding his veto, or which have become a law by the expiration of the ten days, § 4-9. If passed by two-thirds present after the veto, the presiding officers are to endorse on the bill a certificate of its passage by the requisite number, § 6, 7. The secretary of state is required to certify and endorse on every bill, the day, month and year, when the same became a law ; the certificate is made conclusive of the facts therein declared; and he shall deposite the same in his office ; § 10, 11. He shall deliver a certified copy of each law (except acts of incorporation) deposited in his office, and of his endorsement thereon, to the state printer, to be published, § 13 ; and every law so published may be read in evidence in all courts of justice, p. 168, § 8. The secretary shall also cause the laws passed at each session of the legislature, together with the concurrent resolutions, to be printed by the state printer in volumes of octavo size, which may be read in evidence in all courts of justice, § 10,12. I have always been inclined to the opinion, that upon a fair interpretation of these several provisions, regarding their scope and purpose, the printed publication of the statutes, both in the state paper and in the volume, should contain the endorsed certificates of the presiding officers, and of the governor. The law comes into the hands of the secretary, with these endorsements inscribed, for his certificate, which would seem naturally to follow them; and this appears to me to be the shape in which publication was contemplated by the legislature. Looking} perhaps, solely at the insultated sections directing the printing in the state paper and volume, and construeing the duty imposed with reference to them exclusively, the above intimation may not be well founded. It is certain the usase has been to omit them.
*465 *Tf the provisions prescribing the endorsements bv the presi- [ *610 ] ding officers and governor, are merely directory, and not imperative, or a condition to the validity of the law, then the omission would be of no importance; if otherwise, it is (at least the printed publication of them would be,) a matter of public convenience. If material to determine the validity of the law within the two-thirds provision in the constitution, or within any of the sections of the Revised Statutes regulating the mode of the enactment of laws, they can still be brought to our notice, doubtless, by an exemplified copy of the original on file. Until this is done, we do not look beyond the statute as published by the requisite authority, and shall assume each there found to be constitutionally enacted.
In the case before us, assuming that the special pleas constitute a valid defence to the action, if true, under the test given in section three, 1 R. S. 143, which declares that no bill shall be deemed to have been passed by the assent of two-thirds, unless so certified hy the presiding officer of each house, an exemplified copy of the general banking law might determine the fact involved in them. If, on its production, no such certificate appeared, the court would be bound to regard it as passed by a majority only. But, suppose it did appear, would it be conclusive ? It seems to me it would be so. There are only two modes of contradicting it: 1. By the journals of the two houses; and 2. By parol testimony. The presiding officer had all the benefit of the first; the ayes and noes are taken, and the journal made up under his supervision and control. His means of ascertaining and determining the fact, when he declares the law to be passed, exceed those of any other tribunal that might afterwards be called upon to inquire into it. Besides, the hurry and looseness with which the journals are copied, and the little importance attached to the printed copies, necessarily impair confidence in their correctness. They are most uncertain data upon which to found a judicial determination of the rights of property, much more of great constitutional questions. As to "the second mode of contradicting the certificate: the evidence would, if possible, be still more fallible and unsatisfactory. Indeed, we can scarcely imagine a case where, “from its "nature, the proof would be so subject to the doubtful [ *611 ] and conflicting recollection of witnesses. Nothing short of absolute necessity could justify a resort to it. It would hardly deserve weight in contradicting the journal itself; much less, the certificate of the presiding officer affixed to the law. But it is unnecessary to pursue.these views, as they are not material to the decision of this case. They came up in the course of the examination as intimately connected with the subject; but I do not desire to be understood as committing myself upon the question, if, on a future investigation, when it shall be directly involved, these views should be found untenable.
*466 In the cases of Warner & Ray v. Beers, and Bolander v. Stevens, before referred to as decided in the court for the correction of errors, the point was involved and directly decided, that the associations formed under the general banking law, were not corporate bodies within the spirit and meaning of the constitutional provision, and for that reason it was competent for the legislature to pass the act by a majority vote. There is no foundation, therefore, for these pleas.
The first count of the declaration in this case, however, is defective, and would be bad even on motion in arrest after verdict. The objection is, therefore, available here, 16 Wendell, 9. The plaintiff shows no legal title to the bill of exchange; it is payable to the order of C. E. D. Wood, and has not been indorsed. It is supposed that the addition of cashier to the name of the payee, authorizes the averment in the count, that he is the agent of the plaintiff; and that the suit may be sustained in the name of the principal. I do not say but that a bill might be drawn in a way to. justify the application of this rule; but the name of the principal should, at least, appear on the face of the paper; and even then, there may be some doubt upon the cases. Here the addition of cashier is but a description of the person; in legal effect, payment is to be made to the order of Wood, and parol evidence is inadmissible to vary it. It has been held, that in a bill made payable to A, or order, for the use of B, the latter has but an equitable interest; and that the right of transfer is in A. Byles [ *612 ] on Bills, 84; Bayley, 76. In Van Ness v. Forest, *8 Cranch, 30, the note was payable to F. president of a commercial company, and the court held the legal title to be in him, and the suit sustainable in his name alone.
This objection does not, however, apply to the common counts ; though the plaintiff will be obliged to meet it when the bill is offered in evidence under these counts. It may also be added, that the whole frame of the declaration proceeds on the ground of indebtedness to the plaintiff individually, independently of any interest in or connection with the bank, as will be seen on reference to the case of Thomas v. Dakin, and the cases above referred to, decided in the court for the correction of errors. Indeed, we have repeatedly held on demurrer to a declaration in this form, that no-question could be raised as to the validity of the general banking law.
I am of opinion that the plaintiffs are ^entitled to judgment, with leave to the defendants to amend on the usual terms.
By Corar, J.
There were several grounds on which our judgment in Warner v. Beers, 23 Wend. 103, might have been affirmed, short of deciding that the general banking law could have been made available in all respects, without having been passed by a majority vote. One ground *467 might have been, that the mode of its passage was not put in issue as a question of fact upon the record; and that, therefore, the intendment should be, that it was passed by a two-third vote. Another might have been, that though the act might be void as creating a corporation, yet it was valid so far as it declared that the president might sue, leaving the companies to be considered as mere partnerships.
Now, if the affirmance of the judgment rendered by this court did not necessarily involve the proposition, that a mojority vote was sufficient to create associations under the banking law, then nothing has been established by the court of errors different from what we ourselves held when the case was before us. We found no insurmountable difficulty in sustaining the action, inasmuch as the extrinsic fact averred, viz.: that a two-third vote was not given, had not been put in issue.
*Nor is the special resolution of the court for the correction of [ *613 ] errors binding upon us, without its appearing by the case itself, that the point embraced by that resolution w.as necessarily involved in the decision which affirmed our judgment.
I am not, therefore, prepared to concur with the chief justice, in considering our own views in respect to the powers of the legislature as overruled by the court of errors. And I am the more unwilling to express an opinion upon the point in this case, because it is not necessary to its decision. I agree with him, that the pleas are bad, independently of that question.
The declaration is one by the plaintiff, Hunt, in his own right. Calling himself president of a certain company is a mere descriptio persones. He does not declare as president of a company created under the general banking law; and though the first count is, therefore, bad, as not connecting him with the bill of exchange, the others are good. The pleas demurred to are in bar of the company’s right; that does not affect the plaintiff’s right.
The defendants claim a right to go back and attack the declaration. That they cannot do, as some of the counts are good, and their pleas are to the whole declaration. There must therefore be judgment for the plaintiff.
By Bronson, J.
If this can be regarded as the suit of Washington Hunt who describes himself as president of the Lockport Bank and Trust Company, I agree that the pleas are bad, and the plaintiffis entitled to judgment. But this was undoubtedly intended, and should,! think, be regarded as the suit of the bank; and then the declaration is bad, because it does not allege that the promises were made to the bank by its business name. Although the corporation may sue in the name of its president, that is not the way in which it is authorized to contract. Delafield v. Kinney, 24 Wend. 345. As in my view of the case, the declaration is bad, it is of course unnecessary to examine the pleas. I think the defendants are entitled to judgment.
*468 [ *614 ] *A majority of the court, however, concurring in opinion, that the plaintiff was entitled to judgment, judgment was rendered accordingly.