The Village of Little Falls, N. Y., Respondent, v. Helen Cobb, Appellant.

*Demurrer to an answer — the sufficiency of the complaint at issue — action by an incorporated village to adjudge a tax a lien on certain real estate and to foreclose the same — not maintainable at common law, nor under chapter 291 of the Laws of 1870 or chapter 308 of the Laws of 1884.*

On the hearing upon a demurrer interposed to an answer, whether the demurrer is to a defense therein or to a counterclaim (unless perhaps where the allegations of the complaint are expressly admitted by a part of the answer to which no demurrer is taken), the question of the sufficiency of the plaintiff's complaint may be raised by the defendant.

The objection that the complaint does not state facts sufficient to constitute a cause of action, is not waived by the answer, but is always in issue, and, therefore, if upon the hearing of a demurrer to the answer, the defendant's claim, that the complaint in the action does not state facts sufficient to constitute a cause of action, is correct, the plaintiff's demurrer cannot be sustained.

An incorporated village cannot at common law maintain an action in which the relief demanded requires that a certain tax assessed for the laying out of a village street be adjudged to be a lien on the premises of the defendant, that such lien be foreclosed by a sale of the premises to pay the tax, with interest and costs, and that the defendant's equity of redemption therein be foreclosed; such an action must be authorized by statute.

Under the provisions of section 9 of title 6 of chapter 291 of the Laws of 1870, no action can be maintained by a tax collector or in the corporate name of a village, until thirty days have elapsed after the date of the collector's return;

and when in the complaint in such action there is no allegation as to the date of such return or as to when it was made, and nothing therein showing, or tending to show that, after such return, thirty days had elapsed before the commencement of such action, the complaint does not state facts sufficient to constitute a cause of action thereunder.

Neither chapter 291 of the Laws of 1870 nor chapter 308 of the Laws of 1884 gives a right of action to a village to have a tax adjudged to be a lien on premises assessed therefor, and to enforce such lien by a sale of the premises in payment of the assessment, interest and costs, and to foreclose the owner's equity of redemption therein.

APPEAL by the defendant, Helen Cobb, from an interlocutory judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Herkimer on the 6th day of November, 1893, upon the decision of the court rendered after a trial at the Herkimer Special Term sustaining the plaintiff's demurrer to the ninth division of the defendant's answer, with notice of an intention to bring up for review on such appeal said interlocutory judgment and the order dated October 5, 1893, sustaining the plaintiff's demurrer.

*H. Clay Hall* and *R. H. Smith*, for the appellant.

*H. A. De Coster* and *E. E. Sheldon*, for the respondent.

MARTIN, J. :

To a proper understanding of the questions involved on this appeal, a summary of the allegations of the pleadings seems necessary. In the complaint it was alleged that the plaintiff was a municipal corporation, duly incorporated under the laws of this State; that on or about the 1st of September, 1891, an application for making and grading Milligan street, one of the public streets of the plaintiff, by means of an assessment on lots interested in the improvement, was made and presented to the plaintiff's board of trustees, by a petition duly executed by a majority of the persons owning lots on that street, being more than one-half in extent of lots fronting thereon, and of the land subject to be assessed as provided in section 32 of the plaintiff's charter; that it was received by the board and placed on file with the clerk of the plaintiff; that such street had not theretofore been made or graded by means of such assessment; that thereupon the trustees of the plaintiff ordered it

to be graded as provided in section 32, and notice, in writing, of such application, and subscribed by the president, stating the time and place where the same would be considered, was published in a newspaper in the village for two successive weeks before the time appointed therefor, inviting all persons who might be interested to appear and show cause, if they had any, against the application; that shortly thereafter, and prior to the making and grading of the street, affidavits showing such publication and who were the owners of lots subject to assessment for such improvement, together with the application, were filed with the plaintiff's trustees, and an entry thereof duly made in the journal of the village; that thereupon, at a regular adjourned meeting of such board of trustees, held at the time and place stated in the notice, no one appearing in opposition to the application, it was duly granted, and a resolution and ordinance for the making and grading of the street was duly passed by the board of trustees; that such ordinance directed the expense of the improvement to be estimated and assessed upon all lots fronting upon the street or part of the street to be improved, or upon the owners thereof, in proportion to the benefit which the owners respectively were deemed to acquire thereby; that such ordinance specified the grade, width and the manner of construction of the street, and a notice to contractors for proposals for the construction of such street was, by the board of trustees, caused to be published in a newspaper printed and published in the village; that thereafter, at a time and place fixed by such notice, the board met at their rooms in the village and received such proposals; that, after examining the proposals made, it duly awarded the contract for the making and grading of the street to the lowest bidder; that thereupon the plaintiff entered into a contract with him for making and grading the street according to such ordinance; that, in pursuance of such contract, the contractor constructed said street according to the ordinance, and completed the same about December 1, 1891, and it was then duly accepted by the board; that at its regular meeting on October 6, 1891, the board ordered an estimate and assessment therefor, and fixed the time and place when application would be made to the county judge of Herkimer county for the appointment of three commissioners to make such assessment; that notice of such application was published for two weeks in a news-

paper printed and published in the plaintiff village; that, at the time and place so fixed, application was made to the county judge, who appointed three residents of the village as such commissioners; that thereupon the board caused a proper survey and map to be made, and a blank form of assessment to be prepared, containing the names of the persons who, in its judgment, were subject to be assessed for the making and grading of such street, and a description of the lots belonging to each person, who, in its judgment, were subject to be assessed, and appointed as a time and place for the meeting of such commissioners, the 25th day of November, 1891, at ten o'clock, A. M., at the rooms of the trustees in said village; that it caused at least ten days' notice thereof to be personally served on all such owners, including the defendant; that, at the time and place appointed, the commissioners met, examined the street, heard the persons interested, and the proofs which were offered by them as to the value of the property, and other facts affecting the question; that, before entering upon the discharge of their duties, the commissioners took and subscribed the proper oath; that the commissioners adjourned from time to time, and at these meetings the defendant appeared both in person and by attorney, and submitted proofs before such commissioners; that the plaintiff also appeared, and made proofs of the foregoing facts and matters; that thereafter the commissioners assessed the expense of the damage for the making and grading of such street upon all the lots subject to be assessed therefor, and deemed benefited thereby, upon the owners of such lots, in proportion as near as practicable to the benefits which the respective owners were deemed to acquire by the improvement; that on December 30, 1891, the commissioners, by a certificate in writing, signed by them, and contained in an assessment roll, certified the assessment made by them to the plaintiff's board of trustees, and the same was duly filed with the clerk of the plaintiff on January 4, 1892; that the proceedings before mentioned were duly had, taken and performed pursuant to the provisions of the plaintiff's charter, and that the trustees of the plaintiff had jurisdiction to make such ordinance for the making and grading of Milligan street, and of all the proceedings hereinbefore alleged; that the commissioners had jurisdiction of the making said assessment, and that it was duly made; that among the assessments so made by

such commissioners was the sum of $146.70 against the defendant, which was assessed upon the lands owned by her therein described as follows: " All that certain village lot and premises situate on the northerly side of Milligan street, in the village of Little Falls, and designated as lot 54, 55, 56, on a map of said street made by E. T. E. Lansing, and bounded easterly by Lewis street, and westerly by premises of John Parker;" that such assessment, by virtue of the proceedings aforesaid, and by virtue of the provisions of the plaintiff's charter and section 45 thereof, then became, and still is, a lien upon said lot in favor of the plaintiff; that thereafter, and on January 11, 1892, said board of trustees duly issued and executed their warrant to the collector of said village in writing, signed by them upon said assessment roll for the collection of said assessments so made by said commissioners, and certified to them; that said assessment roll and warrant were thereupon delivered to and placed in the hands of such collector for collection, and said collector thereupon proceeded to and did collect all of said taxes so levied and assessed and contained in said assessment roll, except the said tax hereinbefore mentioned, assessed against the defendant and upon said lands owned by her; that thereafter, and upon the expiration of said warrant, the collector returned said assessment roll to the trustees with his certificate showing the collection of all the taxes and assessments in said roll contained, except said assessment against the defendant and her property, which said collector returned as unpaid, and that he was unable to collect the same, and that he was not, upon diligent inquiry, able to discover any goods or chattels belonging to or in the possession of the defendant whereon he could levy the same; that the plaintiff is unable to collect said assessment out of the goods and chattels of the defendant; that since the making of such assessment the defendant has been repeatedly requested to pay said assessment by said collector and other officers and other persons duly authorized, but she has neglected and refused, and still neglects and refuses so to do, and that this action for the collection of the same is brought pursuant to the direction of the plaintiff's board of trustees; that, by reason of the foregoing facts and matters, the defendant is indebted to the plaintiff in the sum of $146.70, and interest thereon at the rate of twelve per cent per annum since about March 11, 1891.

The relief demanded by the plaintiff was that it be adjudged that said sum of $146.70 is a lien upon said lot; that it be enforced by a sale of the lot under the direction of the court; that the plaintiff be paid the amount of such assessment, and the interest thereon at the rate of twelve per cent per annum, with the costs of this action, out of the proceeds of such sale; that the defendant and all persons claiming any interest in said lands under the defendant since the accruing of said lien, be foreclosed of any equity of redemption therein, and for such other and further relief as to the court might seem just and agreeable to equity, with costs of this action.

The first eight subdivisions of the defendant's answer consisted chiefly of denials of the allegations of the complaint. In the ninth subdivision, it was alleged substantially as follows: That the defendant further answering, and by way of an equitable offset and counterclaim to the demand of the plaintiff in this action, alleges and charges the truth to be that prior to the alleged proceedings set up in the complaint, she, by herself and her immediate grantor of the property described in the complaint, had built and constructed over the creek or runway crossing said Milligan street opposite her lots, a substantial covering of stone, at a cost of nearly fifty dollars, and had, by her said grantor and herself, caused said street to be filled in with good and substantial material opposite her said lots and covering said creek or runway, and making a good, graded roadway on said street beyond the center thereof, as laid out by the engineer who established the grade of said street; that the cost of said filling was over $200; that such covering and filling by the defendant and her grantor inured to the benefit of the plaintiff and to the benefit of all the other lot owners in said street, and that if such work had not been done by herself and her grantor, the opening and grading of Milligan street would have cost at least the sum of $200 more than the plaintiff was compelled to pay therefor. The defendant further answering alleged that, prior to the making and grading of such street, as alleged in the complaint, said premises had good ingress and egress to and from them upon said Milligan street, and said lots had and have a good natural front upon Lewis street, which is graded and sidewalks built thereon in front of all said premises on Lewis street; and she further represents that,

by the grading done by the village, the ingress to said lot from Milligan street was injured, and said lots have not in any way been benefited by said grading, but, on the contrary, the defendant alleges that prior to said grading by the village there was a good, hard road on said Milligan street opposite said lots, and that the grading done by the village was of a character not only to injure the ingress and egress to said lots from Milligan street, but to turn the water from said street upon said lots, by which acts of the plaintiff the defendant has been damaged to the amount of $100.

The defendant demanded judgment that the complaint be dismissed; that she have judgment against the plaintiff for the sum of $300, and for such other and further relief as to the court should seem just and equitable, with costs.

The plaintiff's demurrer was as follows: " The plaintiff demurs to that part of the defendant's answer contained in the ' Ninth ' division thereof, and demurs to each of the counterclaims and defenses in said ' Ninth ' division alleged, on the ground that the said counterclaims and defenses and each of them are insufficient in law upon the face thereof, and that the said counterclaims do not state facts sufficient to constitute a cause of action, and that no one of said counterclaims states facts sufficient to constitute a cause of action against the plaintiff."

On the trial of the issues of law thus joined, the plaintiff's demurrer was sustained upon all the grounds stated in it, and an interlocutory judgment was directed to be entered in favor of the plaintiff sustaining such demurrer. A judgment in accordance with the decision of the Special Term was subsequently entered, with costs.

The appellant insists that the Special Term erred in sustaining the plaintiff's demurrer for the reasons: (1) That the demurrer was bad because the counterclaims and defenses demurred to were not separated or specified separately, as required by sections 495 and 496 of the Code of Civil Procedure, and because the demurrer was taken to all the counterclaims, and does not distinctly specify the objections to the counterclaims or either of them. (2) That at least one of the counterclaims was sufficient, and, hence, that the demurrer should not have been sustained. (3) That the complaint does not state facts sufficient to constitute a cause of action against the defendant.

If it is true that the allegations of the complaint are insufficient to constitute a cause of action against the defendant, and the question of the sufficiency of the complaint is properly involved in the decision of this case, it will be unnecessary to examine the other questions raised by the appellant, as in that event the judgment of the Special Term is clearly wrong and should be reversed.

It seems to be well settled that, upon a demurrer to an answer, the question of the sufficiency of the complaint may be raised. In *Wilmore* v. *Flack* (16 Wkly. Dig. 236) it was held: " That the objection that the complaint does not state facts sufficient to constitute a cause of action is not waived by answer, but may be taken on the trial of any issue of fact or of law joined in the action. That the sufficiency of the complaint is always in issue, and an objection to it, if well taken, is a complete answer to the plaintiff's demurrer, and must result in a dismissal of the complaint." While this case seems to have been reversed in 96 N. Y. 512, it was upon the ground that the complaint stated a cause of action, and the doctrine above quoted was not denied or questioned, but in effect affirmed. On demurrer to the answer for insufficiency, the defendant may attack the complaint on the ground that it does not state facts sufficient to constitute a cause of action. (*People* v. *Booth*, 32 N. Y. 397.) If the complaint is not good, the demurrer should be overruled. (*Parsons* v. *Hayes*, 50 N. Y. Super. Ct. [18 J. & S.] 29 ; *Petersen* v. *Swan*, Id. 46.) From an examination of the answer and demurrer, it will be perceived that the matters set up in the ninth subdivision of the answer are set up both as an equitable offset and as a counterclaim, and that the demurrer was to the defenses therein set forth, as well as to the counterclaims. The decision of the court and judgment both relate to the defenses as well as to the counterclaims. Hence, if it can be said that the matters stated in that subdivision were alleged as defenses to the action, as well as counterclaims, it follows that if the complaint is insufficient the plaintiff's demurrer should have been overruled.

The plaintiff, however, claims that the matters set out in the portion of the answer demurred to were alleged as counterclaims, and that upon a demurrer to a counterclaim the defendant cannot attack the complaint. Thus, to determine whether the sufficiency of the complaint could be attacked upon the trial of the issues of

law raised by the demurrer herein, it is perhaps necessary to deter· mine whether upon a demurrer to a counterclaim the defendant can raise the question as to the sufficiency of the plaintiff's complaint. In *Willover* v. *First National Bank of Olean* (40 Hun, 184) the plaintiff demurred to a counterclaim set up in the answer, and in delivering the opinion in that case BRADLEY, J., said : "But it is contended on the part of the defendant that the complaint does not state a cause of action against the defendant. If that is so the plaintiff's demurrer to the answer was properly overruled, without reference to the question of the sufficiency of the alleged counter- claim." Thus, the General Term of the fifth department in effect held that, upon a demurrer to a counterclaim, the sufficiency of the complaint was involved, and if insufficient the demurrer should be overruled. This question was somewhat discussed in *Corning* v. *Roosevelt* (18 Civ. Proc. Rep. 399, 401), and in that case Judge O'BRIEN held that upon the hearing of a demurrer to a reply, the sufficiency of all the preceding pleadings was open to consideration, and that the court should determine the sufficiency of the reply, the counterclaim and the complaint. In *Williams* v. *Boyle* (48 N. Y. St. Repr. 713) it was held by the General Term of the Court of Common Pleas that, upon a demurrer to a counterclaim set up in an answer, it was proper to inquire into the sufficiency of the com- plaint, and the latter failing to show a cause of action, to render judgment for its dismissal. In *Lawe* v. *Hyde* (39 Wis. 345, 355) it was held that a counterclaim in an answer was a pleading to the complaint, and where the latter failed to state a cause of action a demurrer to a counterclaim went back to the complaint and if the complaint was insufficient the demurrer should be overruled.

A somewhat contrary doctrine appears to have been held in the case of *Morey* v. *Ford* (32 Hun, 446), where the defendant had answered the complaint admitting the filing of a certificate of incor- poration and the · failure to file the report, and taking issue upon other allegations of the complaint ; it was held that upon the hear- ing of a demurrer to a counterclaim or offset, the defendant could not challenge the sufficiency of the allegations of the complaint in regard to the filing of the certificate and failure to file the report. It may be that where a defendant has in his answer expressly admitted that certain acts have been performed, he cannot on

demurrer to the answer insist that the complaint is defective in not properly alleging the facts which he has expressly admitted. That case may have been well decided upon the facts before the court, but should not, we think, be regarded as a binding authority for the general proposition that a complaint cannot be attacked upon a demurrer to a counterclaim. The only authority cited in that case for any such proposition was *Wheeler* v. *Curtis* (11 Wend. 653). When the latter case is examined, we find that the defendant therein had pleaded to the declaration, the plaintiff had served a replication, and the defendant had demurred to the replication. Upon a trial of this demurrer, it was held that as the defendant had waived any demurrer to the declaration by answering, he could not on a demurrer to the replication attack the declaration. The doctrine of that case has no application to the question before us. Moreover, the principle as there stated was qualified in *Miller* v. *Maxwell* (16 Wend. 24) and *Cooper* v. *Greeley* (1 Den. 358). In *Graham* v. *Dunnigan* (13 N. Y. Super. Ct. [6 Duer] 629, 630) this question was alluded to but not decided. We find nothing in these authorities which would justify us in holding the doctrine contended for by the plaintiff.

We are of the opinion, based both upon principle and authority, that upon a demurrer to an answer, whether the demurrer is to a defense therein or to a counterclaim (unless perhaps where the allegations of the complaint are expressly admitted by a part of the answer to which no demurrer is taken), the question of the sufficiency of the plaintiff's complaint may be raised by the defendant, and the objection that the complaint does not state facts sufficient to constitute a cause of action is not waived by the answer, but is always in issue, and, therefore, if the defendant's claim that the complaint in this action does not state facts sufficient to constitute a cause of action is correct, the Special Term erred in sustaining the plaintiff's demurrer.

This leads to a consideration of the sufficiency of the plaintiff's complaint. Without examining the plaintiff's charter so far as it relates to the regularity of the proceedings taken to make and grade Milligan street, but assuming that the procedure which resulted in levying the tax was regular and that the plaintiff acquired a lien upon the defendant's premises therefor, we do not think the complaint states a cause of action. If this action can be maintained, it

is because it is authorized by some statute. That the plaintiff has no right of action at common law to secure the relief sought is manifest. The relief demanded is that the tax be adjudged a lien on the defendant's premises, that such lien be foreclosed by a sale thereof to pay the tax assessed upon laying out such street, with twelve per cent interest and costs, and that the defendant's equity of redemption therein be foreclosed. By the plaintiff's charter, the tax thus assessed became a lien upon the defendant's land. (Laws 1850, chap. 330, § 45.) Section 64 provides that when a tax or assessment which is a lien upon a lot shall be returned by the collector unsatisfied, it may be enforced by an order of the trustees directing the lot to be leased for a time sufficient to pay the lien, interest and costs. The charter then prescribes the procedure to be adopted. If payment is not made, the president must cause the property to be leased to the person or his assigns who will take the same for the shortest term, and pay therefor the amount required, with interest and costs. After the sale, notice thereof must be given by the clerk to the owner, stating the length of time for which the same was let, the sum for which it was let, and that unless it be redeemed by payment thereof to the treasurer and ten per cent in addition for the benefit of the purchaser within thirty days after service of such notice, a lease will be executed by the president to the lessee. After thirty days from the service of such notice a lease may be executed of the property to the person to whom it was struck off, or his assigns, for the term for which it was struck off, briefly referring to the non-payment of the tax, assessment or other lien, and the lease shall be presumptive evidence that all the proceedings creating the lien, and for the enforcement thereof, to and including the lease, have been regular and according to law. (§§ 65, 66, 67.)

The only remedy given by the plaintiff's charter for the collection of a tax or assessment made for the purpose mentioned in the complaint is that above referred to. That the complaint does not state a cause of action against the defendant under the provisions of the plaintiff's charter is manifest.

The plaintiff, however, contends that this action is authorized by chapter 308 of the Laws of 1884, and the provisions of the general law for the incorporation of villages. Chapter 308 of the Laws

of 1884 declares : " The trustees and officers of any village in this State created by special charter shall have and possess the same powers as are prescribed in any general act for the incorporation of villages within this State, except as such special charter may be in conflict with any provision or provisions of said general acts." If it were to be held that this provision of the statute invested the plaintiff or any of its officers with power to collect this tax in the manner provided for by section 9 of title 6 of chapter 291 of the Laws of 1870, being the general act for the incorporation of villages, which we by no means hold or decide, it would still be necessary for the plaintiff to allege facts sufficient to constitute a cause of action under the provisions of that statute.   Section 9 provides : " In case the collector shall return that a tax or assessment on any estate is unpaid, and he is unable to collect the same, the trustees are authorized and empowered, after the lapse of thirty days after the date of such return, to prosecute à civil action against the owner or owners of such estate in the corporate name of the village, and to recover judgment for such tax, with twelve per cent interest thereon and all necessary costs and expenses of said action." It then provides for filing a transcript and docketing the judgment in the county clerk's office of the county wherein the village is situated, and that the judgment shall thereupon be a lien upon all real estate of the judgment debtor in the county where it is docketed, and that a sale of such real estate may be made on an execution issued to the sheriff of the county if not collected out of the personal property of the debtor, and that all the provisions of law in reference to sale and redemption of real estate on execution shall apply to sales and redemptions under that act.   Under the provisions of this statute no action can be maintained by the collector or in the corporate name of the village until after the lapse of thirty days after the date of the collector's return.   While we find that it is alleged in the complaint that the collector returned the assessment roll to the trustees showing the collection of all the taxes and assessments in said roll, except the assessment against the defendant and her property, which the collector returned as unpaid, and that he was unable to collect the same, there is no allegation as to the date of or when this return was made, or any fact showing or which would tend to show that the thirty days after the date of such return had elapsed before the

commencement of this action. No right of action existed under or was conferred by this statute until the lapse of thirty days after the date of the return that the tax or assessment was unpaid. Therefore, if it be admitted that the action could be maintained under section 9 of title 6 of chapter 291 of the Laws of 1870, still, as the complaint does not state facts sufficient to constitute a cause of action under that statute, it follows that the court erred in sustaining the plaintiff's demurrer to the ninth division of the defendant's answer.

Moreover, this action was not one to recover a judgment against the defendant for the amount of her tax under the provisions of that statute. It was an action to have such tax adjudged a lien upon the defendant's premises, to enforce such lien by a sale of the premises for the payment of the assessment, interest and costs, and to foreclose the defendant's equity of redemption therein. No such right of action is given by either of the statutes mentioned. By the plaintiff's charter a person whose property is leased for the payment of a tax or assessment against him is given thirty days after service upon him of a notice of such leasing in which to redeem his property therefrom upon the payment of the tax and ten per cent interest. Under the General Village Act, upon the sale of property under an execution issued upon a judgment rendered for any tax or assessment, the owner is given the same right of redemption as exists upon the ordinary sale of real estate under an execution. Thus, in the former case, the defendant would have had thirty days after notice in which to redeem her property from the lease made by the president of the plaintiff. In the latter case she would have had one year from the time of the sale in which to redeem. These rights of redemption are substantial, and the plaintiff is not entitled to maintain an action that would in any way limit or deprive her of such rights.

These considerations lead us to the conclusion that the interlocutory judgment herein should be reversed.

HARDIN, P. J., and MERWIN, J., concurred.

Interlocutory judgment sustaining the plaintiff's demurrer reversed, with costs, and interlocutory judgment overruling such demurrer granted, with costs of the demurrer to the defendant, and leave granted to amend the complaint upon payment of the costs of the demurrer and the appeal.