(119 App. Div. 339)

NEW YORK BUREAU OF INFORMATION v. RIDGWAY-THAYER CO.
et al.

(Supreme Court, Appellate Division, First Department.  May 10, 1907.)

LIBEL—WORDS LIBELOUS PER SE.

An article, entitled "Bucket Shop Sharks," reading:  "One of M.'s most intimate friends and active lieutenants is K., founder of the New York Bureau of Information, now managed by his brother, K.  K. is a tout, sleek enough in his methods to have corralled bankers and brokers of unimpeachable legitimacy as clients for the New York Bureau of Information.  His portrait, until it was surreptitiously removed, was No. 295–G, in the Chicago Rogues' Gallery, and he has the distinction of having served a penal sentence for the larceny of goods from such masters of merchantry as Levi Z. Leiter and Marshall Field"—was libelous per se as to the New York Bureau of Information, whether the statements in regard to K. referred to the founder of the bureau or to his brother.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 32, Libel and Slander, §§ 80, 174.]

Ingraham and Scott, JJ., dissenting.

Appeal from Special Term, New York County.

Action by the New York Bureau of Information against the Ridgway-Thayer Company and others.  From an interlocutory judgment overruling their demurrer to the complaint, defendants appeal.  Affirmed.

Argued before PATTERSON, P. J., and INGRAHAM, LAUGHLIN, CLARKE, and SCOTT, JJ.

Clarence J. Shearn, for appellants.
Chester H. Lane, for respondents.

LAUGHLIN, J.  This is an action for libel.  The ground of the demurrer is that the facts alleged do not constitute a cause of action.  No special damages are alleged.  The question presented by the demurrer is whether the article alleged to have been published of and concerning the plaintiff is libelous per se.  The plaintiff alleges that it is a domestic corporation lawfully engaged in conducting in the city of New York a reporting agency, "for the purpose of giving information to its subscribers relative to persons, corporations, and firms, their business standing and reputation," and "has established for itself a high reputation among the business community for the accuracy, integrity, and trustworthiness of its reports, and has enjoyed a good name, fame, and reputation among its customers and the business community in general, and that as a result thereof" its business has been profitable.  The defendant corporation was the publisher of "Everybody's Magazine," in which the alleged libelous article was published; and the defendant Ridgway was its president, having charge of the conduct of its affairs and the management of the publication, and the defendant Teague composed the article and instigated its publication.  In the July issue of said magazine for the year 1906, in an article entitled "Bucket Shop Sharks," the defendant published the following:

"One of Miner's most intimate friends and active lieutenants is Henry Burton King, founder of the New York Bureau of Information, now managed by

his brother, J. D. W. King. King is a tout, sleek enough in his methods to have corralled bankers and brokers of unimpeachable legitimacy as clients for the New York Bureau of Information. His portrait, until it was surreptitiously removed, was No. 295–G, in the Chicago Rogues' Gallery, and he has the destinction of having served a penal sentence for the larceny of goods from such masters of merchantry as Levi Z. Leiter and Marshall Field."

The sufficiency of the complaint does not depend wholly upon the article as published. The plaintiff alleges by way of innuendo that the defendants meant by said article, and intended to convey the belief to its readers and to the public in general, that the plaintiff's business was managed by persons of notoriously bad character; that it was conducting an unlawful and illegitimate business; that it was organized to promote improper schemes and undertakings; that it is and has been conducted in the interest of persons seeking to defraud the public by means of gambling on horse races and the fluctuations of the stock market; that J. D. W. King, president of the plaintiff, is a tout and a procurer of gambling houses, and adopted improper and unlawful methods in soliciting business for the plaintiff; that the plaintiff's president had been guilty of the crime of larceny, had served a penal sentence therefor, and used improper and unlawful means in procuring the removal of his picture from the Chicago Rogues' Gallery. The falsity of the article and the maliciousness of the publication are alleged; and injury to the plaintiff in its reputation by a loss of public confidence which it theretofore enjoyed, with resulting financial loss and injury to its business, are likewise alleged.

The article is not susceptible of every meaning ascribed to it in the innuendoes. It may be that the charges that King is a tout, and with respect to his having corralled clients for the plaintiff, and with respect to his having served a penal sentence and his picture having been in and surreptitiously removed from the rogues' gallery, refer to Henry Burton King, the founder of the plaintiff, and not to his brother, J. D. W. King, its present president and manager. If it refers to the president and present manager, there could be but little doubt that the article would be libelous per se, because it is manifest that such a charge against the present manager and chief officer of a corporation conducting a business essentially confidential would directly injuriously affect its credit and cause pecuniary injury, which is the test in cases of libel against corporations (Reporters' Association v. Sun Printing & Publishing Association, 112 App. Div. 246, 98 N. Y. Supp. 294, affirmed 186 N. Y. 437, 79 N. E. 710; Union Associated Press v. Heath, 49 App. Div. 254, 63 N. Y. Supp. 96), by injuring its reputation for proper and honest business methods, and for procuring, conveying, and furnishing reliable information.

Assuming, however, that those charges relate to the founder of the plaintiff, still I think the article is libelous per se. In that view it clearly shows, not only the organization of the corporation by this notorious disreputable character and criminal, but that he remained connected with it and took an active part in soliciting business for it. The charges against his business methods while acting for the corporation characterize its business methods and directly affect its credit and cause it pecuniary injury. It does not appear that his busi-

ness connection with the plaintiff has been severed; but, even though it has, still, while it may not be said as a matter of law that the article reflects upon the business and the business methods and management of the plaintiff, yet I think that the jury might find that that was the meaning intended to be conveyed by the publication, and was the sense in which it would probably be understood by those who read it, and, if so, it would, I think, naturally and necessarily result in pecuniary injury to the defendant, be libelous per se, and not demurrable. Morrison v. Smith, 177 N. Y. 366, 69 N. E. 725. I am of the opinion, therefore, that the demurrer was properly overruled.

It follows that the interlocutory judgment should be affirmed, with costs.

PATTERSON, P. J., and CLARKE, J., concur.

INGRAHAM, J. (dissenting). The plaintiff, a domestic corporation, seeks to recover damages for an alleged libel, and the question presented by this demurrer is whether the article published was a libel per se, so that the action can be maintained without an allegation of special damages. The plaintiff "conducts" a general reporting agency in the city of New York for the purpose of giving information to its subscribers relative to corporations and firms and their business standing and reputation. The alleged libel was published in a monthly publication known as "Everybody's Magazine," and was a part of an article entitled "Bucket Shop Sharks." The statement complained of is that:

"One of Miner's most intimate friends and active lieutenants is Henry Burton King, founder of the New York Bureau of Information, now managed by his brother, J. D. W. King. King is a tout, sleek enough in his methods to have corralled bankers and brokers of unimpeachable legitimacy as clients for the New York Bureau of Information. His portrait, until it was surreptitiously removed, was No. 295-G, in the Chicago Rogues' Gallery, and he has the distinction of having served a penal sentence for the larceny of goods from such masters of merchantry as Levi Z. Leiter and Marshall Field."

This article would be libelous per se as to Henry Burton King; but it is a corporation conducting a general reporting agency, referred to as having been founded by King, that seeks to recover. For a publication to be libelous per se as to a corporation the language used concerning it must be such as to "injuriously and directly affect its credit and necessarily and directly occasion pecuniary injury." Union Associated Press v. Heath, 49 App. Div. 247, 63 N. Y. Supp. 96, cited with approval in Reporters' Ass'n v. Sun Printing & Pub. Co., 186 N. Y. 437, 79 N. E. 710. In the latter case the court said:

That "a corporation has the right to maintain an action for libel, when the publication assails its management or credit, and inflicts injury upon its business or property, is a proposition which is true upon principle and which has the support of authority. * * * It is as much entitled to the protection of the law, in those respects, as is the natural person. It differs from the latter, in that it has no character to be affected by a libel; but its right to be protected against false and malicious statements, affecting its credit or property, should be beyond question. There has been some dispute in the cases as to the necessity of setting out the specific damage, which a corporation claims to have suffered from a libelous publication; but I regard the bet-

ter rule to be that such an averment is not necessary, when the language is of so defamatory a nature as to directly affect credit and to occasion pecuniary injury."

To sustain this complaint, therefore, the publication, taken as a whole, must contain some charge or statement in relation to the corporation which necessarily and directly affects its credit and occasioned pecuniary injury. The statements in the published article relate to Henry Burton King. Nothing is alleged as against the integrity or business methods of the plaintiff, and nothing reflecting upon its solvency or which would affect its credit. King is spoken of as being a man who founded the corporation, and who has been succeeded in its management by his brother, against whom nothing is said. The fact that King had been its founder and had obtained clients for it cannot be said to affect the present credit of the corporation or its present management. King is said to be a "tout"— which, when used in this connection, would seem to mean "a person who solicits customers, employment, or the like" (Century Dictionary) —and that he was "sleek enough in his methods to have corralled bankers and brokers of unimpeachable legitimacy as clients for his New York Bureau of Information." I cannot see that there is anything in this statement that could possibly reflect in any way upon the character of the plaintiff, or its business methods or credit, or that could legitimately induce any one to view it with suspicion. King is not alleged to have any present connection with the corporation, nor is it alleged that any of the "bankers and brokers of unimpeachable legitimacy" ever regretted in any way their connection with the plaintiff. The word "corralled" seems to have been used as synonymous with "induced" or "persuaded," and does not imply improper or fraudulent methods.

It certainly would not be a libel per se as against the corporation to assert that a former officer, who had advanced the interests of the corporation, was a dishonest man; and yet this is all that this publication states as relating to this plaintiff. If, as the plaintiff's counsel claimed on the argument, this publication had in fact affected its customers and prevented it from obtaining other customers in the transaction of its business, it should allege such facts as special damage. The object of requiring that special damage be alleged in an action of this kind is to restrict the recovery to actual pecuniary loss. When the libel is of such a character that such loss will necessarily flow from its publication, then such damage will be presumed; otherwise, it must be alleged. Where a libel is published of an individual, affecting his character, a recovery is allowed, in the absence of proof of special damage, because the nature of the injury is such that the specification of the damage is impossible; but, as the only injury that can be sustained by a business corporation is the pecuniary damage that is actually sustained because of the publication, such special damage must be alleged, unless from the nature of the libel pecuniary damages necessarily followed. Where the only connection of a corporation with the libel as published relates to the character of its promoter or former officer, and there is nothing stated concerning

the corporation or its present management, the publication is not libelous per se, and special damage must be alleged.

It follows that the judgment appealed from should be reversed, with costs, and the demurrer sustained, with costs, with leave to the plaintiff to amend, upon payment of costs in this court and in the court below.

SCOTT, J., concurs.