## BRAYTON et al. v. CROWELL–COLLIER PUB. CO.

No. 253, Docket 22669.

United States Court of Appeals Second Circuit.

Argued May 13, 1953.

Decided June 18, 1953.

See, also, D.C., 12 F.R.D. 325.

---

Isaac W. Digges, New York City, Fordyce, Mayne, Hartman, Renard & Stribling, St. Louis, Mo. (Gilbert H. Weil, New York City, of counsel), for plaintiffs-appellees.

Moynihan & McKeown, New York City (Arthur Moynihan and John M. Heck, New York City, of counsel), for defendant-appellant.

Before SWAN, Chief Judge, and L. HAND and FRANK, Circuit Judges.

FRANK, Circuit Judge.

Jurisdiction rests on diversity of citizenship. Plaintiffs claimed they were libeled by an article published in defendant's publication, *Collier's Weekly*. After a trial, the jury awarded plaintiff Carl Brayton $100,-000, and the corporate plaintiff $37,500. The trial judge stated that he would grant defendant's motion for a new trial unless the plaintiffs filed a stipulation consenting to a reduction by 50% of these respective amounts. On the filing of such a stipulation, the judge entered judgment for plaintiffs accordingly. From this judgment defendant appeals.

■ The article not only dealt with flight-training schools in general but specifically referred by name to plaintiff Brayton Flying Service. It did not, however, specifically mention plaintiff Clyde Brayton. But he introduced evidence that he completely controlled the corporate plaintiff and that numerous readers of the article understood it to charge him as well as the Brayton Flying Service with the improper conduct which the article denounced. On that basis, we have no doubt that the jury could reasonably infer that the article, read as a whole, was of such character as to make him an object of public contempt and to be therefore actionable without proof of special damage because libelous *per se*.

■ Contrary to defendant's contention, under New York decisions, (a) whether a written defamatory statement applies to a plaintiff is a jury question; (b) this fact may be proved by extrinsic evidence; and (c) the need for the introduction of extrinsic evidence for such a purpose—as distinguished from the use of such evidence to show that injury resulted from apparently innocuous language—does not convert a defamatory statement which would otherwise be actionable without proof of special damage into one for which recovery can be had only upon proof of such damage.[1] Also contrary to defendant's contention, under New York decisions a corporation has an actionable claim for a libel *per se*, and need not allege and prove special damage, if the language "injuriously and directly affects its credit or the management of its business and necessarily causes pecuniary loss."[2] We think that the publication here was of that kind. The evidence showed publication throughout the United States,

1. As to (a), (b) and (c), see Gross v. Cantor, 270 N.Y. 93, 96, 200 N.E. 592; Balabanoff v. Hearst Consolidated Publications, 294 N.Y. 351, 354, 62 N.E.2d 599; cf. Estill v. Hearst Publishing Co., 7 Cir., 186 F.2d 1017.

2. First National Bank of Waverly v. Winters, 225 N.Y. 47, 52, 121 N.E. 459, 461; Reporters' Association of America v. Sun Printing & Publishing Association, 186 N.Y. 437, 440–441, 79 N.E. 710.

In First National Bank of Waverly v. Winters, 225 N.Y. 47, 52–53, 121 N.E. 459, 460, the court said: "Under neither the first nor the third cause of action was there testimony as to special damages. It is said by the appellant that, as the plaintiff is a corporation, there can be no recovery, because of this fact. In this he is mistaken. An action for libel may be maintained by an injured corporation without proof of special damage where an individual may recover. Does the publication tend to blacken its reputation and to bring upon it hatred, ridicule or contempt? It is true that many statements that might harm an individual would not harm a corporation. A corporation has no personal reputation. But other charges would affect it equally with an individual; a charge of insolvency, for instance, or that its business was carried on dishonestly. And so it may be stated as a general rule that a corporation may maintain an action for libel without proof of special damage if the

and that Brayton, a resident of Missouri, was well known in many states. Since jurisdiction here rests on diversity of citizenship, the New York conflict-of-laws rules govern. What "choice of law," under those rules New York courts will make in such a case is by no means clear.[3] We need not, however, explore that question, for this reason: Both parties assumed, at the trial as on this appeal, that New York decisions, on intra-mural substantive and procedural questions alike, would control. Accordingly, neither plaintiffs nor defendant asked the trial judge to give instructions on any other assumption; consequently, we think it would be improper to disturb the verdict, even if it be true that, had either party so requested, the judge in his charge would have been obliged to instruct the jury to consider rules dissimilar in some respect or other to those in New York, applicable in several other jurisdictions.

▉ The issues of truth and fair comment were correctly left to the jury, and, on the basis of sufficient evidence, were by them decided against defendant. Certain pretrial interrogatories and defendant's answer thereto were received in evidence over defendant's objection. As this matter was relevant to the issue of the correct interpretation of the article, its reception was proper.

Judgment affirmed.

charge is defamatory and injuriously and directly affects its credit or the management of its business and necessarily causes pecuniary loss. New York Bureau of Information v. Ridgway-Thayer Company, 119 App.Div. 339, 342, 104 N.Y.S. 202, reversed on dissenting opinion, 193 N.Y. 666, 87 N.E. 1124; Reporters' Association of America v. Sun Printing & Publishing Ass'n, 186 N.Y. 437, 79 N.E. 710.

"Such is clearly the effect of the charge of violating the excise law if understood as the court holds it should be, and the charge of arson if the jury find that to be the meaning of the third article. To say of a bank that it violates the excise law to protect its securities, or burns a building upon which it holds insurance, is a direct attack on its business methods. If believed, such charges necessarily destroy public confidence in its integrity and injure its credit. [They affect] the corporation as directly as would charges of

dishonorable conduct in business affect an individual. South Hetton Coal Company v. North Eastern News Association, [1894] 1 Q.B. 133. Here the plaintiff, the proprietor of a colliery, owned a number of cottages used in connection with it. The alleged libel was an article with regard to the condition of these cottages. Such an article, the court held, was calculated to injure the plaintiff's reputation in the way of its business, and no special damage need be proved."

3. See, e. g., discussions in Dale System v. General Teleradio, Inc., D.C., 105 F. Supp. 745; Leflar, Choice of Law: Torts: Current Trends, 6 Vanderbilt L. Rev. (1953) 447, 453 ff; Leflar, Single Publication Rule, 25 Rocky Mountain L. Rev. (1953) 263; Mattox v. News Syndicate Co., 2 Cir., 176 F.2d 897, 12 A.L. R.2d 988; Kelly v. Loew's, Inc., D.C., 76 F.Supp. 473, 482–483.