Melanie GEISLER, Plaintiff-Appellant,

v.

Orlando R. PETROCELLI and Pinnacle Books, Inc., Defendants-Appellees.

No. 284, Docket 79–7490.

United States Court of Appeals, Second Circuit.

Argued Oct. 30, 1979.

Decided March 3, 1980.

Daniel J. Kornstein, New York City, for plaintiff-appellant.

Richard M. Messina, New York City (Joseph E. Guimera, New York City, of counsel), for defendant-appellee Petrocelli.

Irwin H. Haut, New York City (Roberta Ashkin, Morris, Duffy, Ivone & Jensen, New York City, of counsel), for defendant-appellee Pinnacle Books, Inc.

Before MESKILL and KEARSE, Circuit Judges, and DOOLING, District Judge.*

MESKILL, Circuit Judge:

Melanie Geisler appeals from a judgment dismissing the diversity action she had commenced against author Orlando Petrocelli and his publisher, Pinnacle Books, Inc., for libel and violation of certain rights of privacy guaranteed under New York State statutes and the common law. The district court had so ruled pursuant to appellees' motions made under Rule 12(b)(6), Fed.R. Civ.P., on the ground that her complaint did not adequately aver that the offending material was "of and concerning" her, an essential element of each of her causes of action under applicable New York law, *Julian v. American Business Consultants, Inc.*, 2 N.Y.2d 1, 17, 155 N.Y.S.2d 1, 16, 137 N.E.2d 1, 11 (1956) (libel); *Swacker v. Wright*, 154 Misc. 822, 277 N.Y.S. 296 (Sup.Ct. Nassau Co. 1935) (invasion of privacy). Without speculating whether plaintiff will, after responsive pleadings and appropriate discovery, develop adequate evidence to allow the case to be submitted to the trier of fact, or even to withstand a motion for summary judgment, we reverse and remand. The dismissal of this action at the pleading stage improperly denied appellant the opportunity to adduce a full record

* Hon. John F. Dooling, Jr. of the Eastern District of New York, sitting by designation.

on the "of and concerning" element of her claims.

## I.

By all accounts, appellant Melanie Geisler is a petite and attractive young woman, noticeably unconventional in neither conduct nor appearance. For a time between 1976 and 1977, she worked as a publicity assistant for Mason Charter, Inc., a small publishing company which during the relevant period employed approximately twenty people, including, for a brief stint, the appellee author. Owing simply to the limited size of Mason Charter's operation, it is conceded that Petrocelli and Ms. Geisler were acquainted, apparently on a casual business basis.

Subsequent to his departure from that employment, Petrocelli in 1976 penned a potboiler entitled "Match Set" concerning the odyssey of a female transsexual athlete through the allegedly corrupt and corrupting world of the women's professional tennis circuit. Though possibly inspired by the recent and non-fictional advent on the scene of a female transsexual tennis player, the book purports to be a work of fiction, and on its frontispiece it sets forth the standard disclaimer of intentional resemblance between its characters or episodes and real persons or actual incidents. Its plot centers upon the attempt by certain unscrupulous persons to manipulate the outcome of a tournament by sabotaging the efforts of certain favored players, thereby making possible an upset victory for the protagonist, whom they alone know to be transsexual.

This central character bears appellant's precise name, "Melanie Geisler" and is described as young, attractive and honey-blonde, "her body . . . firm and compact, though heavier than she would like." Although she is initially portrayed as innocent and naive, during the course of the narrative she is induced to participate in the tennis fraud, and perhaps more to the author's point, lured into untoward sexual conduct which is graphically portrayed.[1]

While appellant is purportedly an upstanding individual and the mother of two, her complaint avers that "although advertised and promoted by defendants as a work of fiction, in truth and in fact the book refers to plaintiff by name and physical description . . . and . . . plaintiff [is] a leading character in the book."[2] It is further alleged that a reasonable reader would likely associate the fictional persona with the plaintiff because, as previously noted, for a six month period in 1976 the author and Ms. Geisler both worked at the same small publishing firm and were casually acquainted.[3] The use of her exact name coupled with a commonality of physical traits and personal knowledge have reputedly caused reasonable people to understand that the character pictured in "Match Set" was appellant, acting as described. In fostering this misimpression, it is asserted that appellees have libeled appellant (Count One), and have intruded upon her privacy in that they have depicted her in a false light and unjustifiably publicized matters of a personal nature thereby transgressing New York Civil Rights Laws §§ 50, 51[4] and the common law (Counts Two and Three).

---

1. To the extent that appellant is described as engaging in criminal conduct, the descriptions would, of course, be libelous per se.

2. Complaint, ¶ 17.

3. Complaint, ¶¶ 11–14.

4. N.Y.Civ. Rights Law § 50 (McKinney) provides:

     A person, firm or corporation that uses for advertising purposes, or for the, purposes of trade, the name, portrait or picture of any living person without having first obtained the written consent of such person, or if a minor of his or her parent or guardian, is guilty of a misdemeanor.

In pertinent part, § 51 thereof provides:

     Any person whose name, portrait or picture is used within this state for . . . the purposes of trade without the written consent [of that person] may maintain an equitable action . . . against the person, firm or corporation so using his name, portrait or picture, to prevent and restrain the use thereof; and may also sue and recover damages for any injuries sustained by reason of such use . . .

■ Appellees moved for dismissal on the ground that the pleaded facts were insufficient to establish that the behavior of a character in a self-proclaimed fictional work was "of and concerning" appellant. As this Court has previously noted, plaintiffs in defamation proceedings bear the burden of demonstrating that

> . . . the libel designates the plaintiff in such a way as to let those who knew [her] understand that [she] was the person meant. It is not necessary that all the world should understand the libel; it is sufficient if those who knew the plaintiff can make out that [she] is the person meant.

*Fetler v. Houghton Mifflin Co.*, 364 F.2d 650, 651 (2d Cir. 1966), *quoting Julian v. American Business Consultants, Inc.*, *supra*, 2 N.Y.2d at 17, 155 N.Y.S.2d at 15, 137 N.E.2d at 11. *See also Hicks v. Casablanca Records*, 464 F.Supp. 426, 430–31 (S.D.N.Y. 1978); *Ali v. Playgirl, Inc.*, 447 F.Supp. 723, 726–27 (S.D.N.Y.1978); *Negri v. Schering Corp.*, 333 F.Supp. 101, 103–05 (S.D.N.Y. 1971); *and see Bindrim v. Mitchell*, 92 Cal. App.3d 61, 75–76, 155 Cal.Rptr. 29, 37–38 (2d App.Dist.), *cert. denied*, —— U.S. ——, 100 S.Ct. 490, 62 L.Ed.2d 412 (1979).

■ The Court in *Fetler* went on to remark that this burden "is not a light one," *supra*, 364 F.2d at 653. That observation signifies that plaintiff must demonstrate that third parties apprehend the similarity between the real person and her literary cognate as something more than amusing coincidence or even conscious parallelism on a superficial plane. Rather, it is required that the reasonable reader must rationally suspect that the protagonist is in fact the plaintiff, notwithstanding the author's and publisher's assurances that the work is fictional. This points up the disturbing irony

inherent in the scheme: the more virtuous the victim of the libel, the less likely it will be that she will be able to establish this essential confusion in the mind of the third party. Thus, the more deserving the plaintiff of recompense for the tarnishing of a spotless reputation, the less likely will be any actual recovery. Such a seeming contradiction is best resolved by the trier of fact since adjudication of the issue as a matter of law will seldom satisfy the expectation that legal holdings be consistent and logical.

■ However this may be, the district judge found on the basis of the pleading that no reasonable reader could mistake Ms. Geisler for her fictional namesake, and on this ground dismissed all three causes of action set forth in the complaint.[5]

## II.

■ We hold that appellant's averments are sufficient to withstand the motion to dismiss. As has been frequently reiterated, the office of a motion to dismiss is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof. As formulated in *Conley v. Gibson*, 355 U.S. 41, 45, 78 S.Ct. 99, 101, 2 L.Ed.2d 80 (1957), a complaint should not be dismissed for insufficiency unless it appears to a certainty that plaintiff is entitled to no relief under any state of facts which could be proved in support of the claim. *See generally* 2A Moore's Federal Practice ¶ 12.08 (2d ed. 1979).

■ Such a bleak prognosis cannot be made for appellant's claims solely upon the averments of the complaint. It is sufficient for dismissal purposes that appellant has

---

5. The district court also stated that appellant's third cause of action, insofar as it seeks recovery for appropriation of appellant's name would be dismissed under the hoary authority of *Roberson v. Rochester Folding Box Co.*, 171 N.Y. 538, 64 N.E. 442 (1902), which holds that such a right is not recognized under the common law. Although the complaint cites New York Civil Rights Law § 50, we do not read the pleading as asserting this particular form of invasion of privacy. The complaint restricts itself to false portrayal and unwarranted publication of personal matters, which we have recently held to be actionable under common law, *Birnbaum v. United States*, 588 F.2d 319, 323–26 (2d Cir. 1978). No other grounds for dismissal were relied upon apart from the alleged failure to satisfy the "of and concerning" requirement.

advanced colorable claims of having been identified and described by defamatory comment, *see, e. g., Handelman v. Hustler Magazine, Inc.,* 469 F.Supp. 1048, 1050 (S.D. N.Y.1978); *Neiman-Marcus v. Lait,* 13 F.R.D. 311, 316 (S.D.N.Y.1952) (Kaufman, J.). Although charges of libel and slander under former practice were considered largely vexatious and their litigation discouraged by requirements that such contentions be set forth in considerable detail, *see* 5 Wright & Miller, Federal Practice and Procedure: Civil ¶ 1245 at 217, the federal rules do not require special pleading. *See, e. g., Pirre v. Printing Developments, Inc.,* 432 F.Supp. 840, 843 (S.D.N.Y.1977); *see also Williams v. Gorton,* 529 F.2d 668, 672 (9th Cir. 1976), *aff'd after remand,* 566 F.2d 1186 (9th Cir. 1977). Accordingly, the mode of pleading defamation is governed by Rule 8, Fed.R.Civ.P., which requires only that plaintiff's charges be set forth in a short and concise statement, detailed only to the extent necessary to enable defendant to respond and to raise the defense of res judicata if appropriate. The pleading of additional evidence is not only unnecessary, but in contravention of proper pleading procedure. Such additional information is now available through the liberalized discovery provisions.

■ Furthermore, it has long been the rule that extrinsic evidence is admissible to buttress the claim that the defamation is "of and concerning" the plaintiff and the fact that resort to such evidence may be necessary does not defeat the claim. *Brayton v. Crowell-Collier Publishing Co.,* 205 F.2d 644, 645 (2d Cir. 1953).

Accordingly, we need not determine at this early juncture whether the "of and concerning" requirement of each of appellant's causes of action can be sustained on the basis of the pleaded facts alone. We do note that the issue is generally left for resolution by the trier of fact, *Fetler v. Houghton-Mifflin Co., supra,* 364 F.2d at 653; *Brayton v. Crowell-Collier Publishing Co., supra,* 205 F.2d at 645; *Bridgewood v.*

*Newspaper PM, Inc.,* 276 App.Div. 858, 93 N.Y.S.2d 613 (2d Dept. 1949); *see also, United Medical Laboratories, Inc. v. CBS,* 404 F.2d 706, 708 (9th Cir. 1968), *cert. denied,* 394 U.S. 921, 89 S.Ct. 1197, 22 L.Ed.2d 454 (1969); *Rosenbloom v. Metromedia, Inc.,* 289 F.Supp. 737 (E.D.Pa.1968), *rev'd on other grounds,* 415 F.2d 892 (3d Cir. 1969), *aff'd,* 403 U.S. 29, 91 S.Ct. 1811, 29 L.Ed.2d 296 (1971); especially where plaintiff has been personally designated, *see, e. g., Middlebrooks v. Curtis Publishing Co.,* 413 F.2d 141 (4th Cir. 1969) (affirming lower court's finding after trial that reasonable reader could not have mistaken fictional character with distinctive name "Esco" with real-life counterpart.) In any event, appellant is entitled to develop and present a full evidentiary record on the issue.

We do not know whether additional circumstances exist which would cause reasonable readers to confuse the real and the fictional Melanie Geisler. Appellant has asserted that they do, although such evidence has not been particularized. Perhaps appellant's circle of friends corresponds in some degree to characters in the book, or perhaps she was once an athletic prodigy. Counsel may also produce affidavits from individuals stating that upon reading or hearing of "Match Set" they believed the protagonist to be derived from appellant.[6]

■ Had such an additional submission been made by appellant pursuant to the dismissal motions, the trial judge could have construed the application as a motion for summary judgment, Rule 12(b), Fed.R. Civ.P., and evaluated the sufficiency of the evidence according to procedures prescribed under Rule 56, Fed.R.Civ.P., *cf. Hernandez v. Lattimore,* 612 F.2d 61, 64 (2d Cir. 1979). The opinion below indicates, however, that in the absence of this additional material, the court treated the motions in the manner in which they were styled, and appropriately confined its gaze to the averments of the complaint.

---

**6.** *See, e. g., Fetler v. Houghton-Mifflin Co.,* 364 F.2d 650, 653 n.8 (2d Cir. 1966); *Middlebrooks*

*v. Curtis Publishing Co.,* 413 F.2d 141, 143 (4th Cir. 1969).

Since the pleading upon its face was sufficient, we believe appellant was entitled to present additional material in support of her claims, and their dismissal pursuant to Rule 12(b)(6) was error.[7] Consequently, the judgment is vacated and the case remanded for further proceedings.

7. Plaintiff alleges that Pinnacle published negligently, recklessly and knowingly. Pinnacle argues that it did not know and thus is not liable; on the strength of the affidavit of its vice president Ettinger, it urges that we presume "conclusively" that, despite Petrocelli's knowledge, "no such knowledge existed on the part of Pinnacle." We must reject this argument. Facts as to such knowledge, recklessness or negligence as might render Pinnacle liable are peculiarly within Pinnacle's knowledge and control, and it does not appear that plaintiff has had the opportunity to cross-examine Ettinger or to have any discovery of Pinnacle.