Eric **MULLENMEISTER**, Plaintiff,

v.

**SNAP–ON TOOLS CORP.**, Defendant.

No. 83 Civ. 7310 (ADS)

United States District Court,
S.D. New York.

June 6, 1984.

Patrick A. Troise, Huntington Station, N.Y., for plaintiff.

D'Amato & Lynch, Douglas Capuder, New York City, for defendant.

## OPINION AND ORDER

SOFAER, District Judge:

■ This is a libel action by an automotive tools salesman who claims that the defendant called him a Nazi by depicting him in a cartoon wearing a helmet bearing a swastika. The defendant Snap-On Tools Corp. has moved to dismiss the action for failure to state a claim upon which relief might be granted. Fed.R.Civ.P. 12(b)(6). Snap-On contends that the complaint does not allege libel per se and that therefore the failure to plead special damages precludes relief under New York law. *See, e.g., Hinsdale v. Orange County Publications, Inc.,* 17 N.Y.2d 284, 270 N.Y.S.2d 592, 217 N.E.2d 650 (1966); *Sharon v. Time, Inc.,* 575 F.Supp. 1162 (S.D.N.Y. 1983); *see also* Fed.R.Civ.P. 9(g). Of course, "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *see Jenkins v. McKeithen,* 395 U.S. 411, 421–22, 89 S.Ct. 1843, 1848–49, 23 L.Ed.2d 404 (1969).

The plaintiff Mullenmeister worked at Snap-On as a distributor and sales manager for eight years prior to June 1982, when he left Snap-On to become district manager of the Matco Tools Corporation on Long Island. Matco competes directly with Snap-On in the sale and distribution of automotive tools and equipment on Long Island.

The Long Island branch of Snap-On publishes a weekly in-house newsletter called the "Long Islander," which includes sales information for the district and is distributed to personnel in the Long Island branch and to other Snap-On branches throughout the company's eastern division. The complaint alleges that, from January 29, 1983 until the time of filing, all issues of the Snap-On newsletter, copies of which are annexed to the complaint as Exhibit 1, included a caricature of Mullenmeister which characterized him as a Nazi. The drawing, duplicated below, consists of four figures across the top of a page. The figure at the far left is loosely styled on the "Pac-Man" of video-game fame and bears the inscription "Snap-On Man." The next two resemble Pac-Man's video victims and bear the inscriptions "Mac" and "Cornwell" respectively, presumably two other Long Island competitors of Snap-On. The figure at the far right depicts a man wearing a martial helmet with a prominent spike protruding from the top—the complaint calls it a "German military style helmet"—and the helmet bears a swastika and the word "Matco."

WEEK ENDING 3/12/83

| DEALER | R/A COLLECTIONS | CASH SALES | E/C COLLECTIONS | TOTAL |
|---|---|---|---|---|
| S. Katsur | $6,221 | $ 379 | $ -0- | $6,600 |
| R. Barrett | 4,383 | 479 | 1,365 | 6,227 |
| G. Byrd | 4,630 | 233 | 1,138 | 6,001 |
| R. diMonda | 4,238 | 29 | 1,456 | 5,723 |
| L. Barbano | 4,318 | 85 | 1,160 | 5,563 |
| J. Graziano | 4,376 | -0- | 896 | 5,272 |
| P. Karous | 3,059 | 766 | 1,294 | 5,119 |
| B. Lloyd | 3,364 | 1,132 | 601 | 5,097 |
| B. Panowich | 4,008 | 205 | 871 | 5,084 |
| J. Albano | 3,249 | 449 | 1,008 | 4,706 |

TOP FIELD GROUP: Mike Perotti's Tri-County Tribe $30,636 $4377 per dealer

Snap-On points out that the drawing does not explicitly refer to Mullenmeister, and contends that the defamatory meaning suggested by Mullenmeister depends upon reference to extrinsic fact—the identification of Mullenmeister as the helmeted figure. According to Snap-On, this reliance on extrinsic fact requires plaintiff to plead special damages, the absence of which requires dismissal.

In New York a plaintiff must plead special damages unless the offending publication comprises libel per se. *E.g., Rinaldi v. Holt, Rinehart & Winston, Inc.,* 42 N.Y.2d 369, 379, 366 N.E.2d 1299, 1305, 397 N.Y.S.2d 943, 949 (1977); *Sharon,* 575 F.Supp. at 1172. Considerable confusion persists as to what constitutes libel per se. Despite much criticism, *see e.g.,* L. Eldredge, *The Law of Defamation* §§ 23–28

(1978), the courts of some jurisdictions have held that if a statement is libelous on its face it is libel per se, but if reference to extrinsic fact is necessary to show the defamatory meaning special damages must be pleaded. *See* R. Sack, *Libel, Slander, and Related Problems* 94–109 (1980); 1 F. Harper & F. James, *The Law of Torts* § 5.9, at 373 & n. 9 (1st ed. 1956); W. Prosser, *Handbook of the Law of Torts* § 111, at 748 (4th ed. 1971). New York law on this point "is in disarray." R. Sack at 104; *see id.* at 104–09; L. Edredge § 24, at 167 n. 60. *Compare Hinsdale*, 17 N.Y.2d at 286–91, 270 N.Y.S. at 594–98, 217 N.E.2d at 651–54 (libel per se despite reliance on extrinsic fact, at least where the fact "not expressed in the newspaper [is] presumably known to its readers"); *with O'Connell v. Press Publishing Co.*, 214 N.Y. 352, 108 N.E. 556 (1915), *and Blumenstein v. Chase*, 100 A.D.2d 243, 473 N.Y.S.2d 996 (2d Dep't) ("libel per se [is] 'a libel in which the fact of defamation is clear from the publication itself'") (quoting *Hogan v. Herald Co.*, 84 A.D.2d 470, 480, 446 N.Y.S.2d 836, 843 (4th Dep't), *aff'd on opinion below*, 58 N.Y.2d 630, 458 N.Y.S.2d 582, 444 N.E.2d 1002 (1982)), *and Ladany v. William Morrow & Co.*, 465 F.Supp. 870, 875 & n. 9 (S.D.N.Y.1978).

■ This disarray has no bearing, however, on defendant's claim that a reader of the newsletter would not understand the drawing to refer to Mullenmeister. Although the language of some cases might suggest otherwise, *see, e.g., Cole Fischer Rogow, Inc. v. Carl Ally, Inc.*, 29 A.D.2d 423, 288 N.Y.S.2d 556, 561–62 (1st Dep't 1968) *aff'd*, 25 N.Y.2d 943, 305 N.Y.S.2d 154, 252 N.E.2d 633 (1969), the need to make a showing that the libel was "of and concerning" the plaintiff does not convert the libel into one that requires the pleading of special damages. *See Le Dans, Ltd. v. Daley*, 10 A.D.2d 502, 200 N.Y.S.2d 618, 620 (1st Dep't 1960); *Brayton v. Crowell-Collier Publishing Co.*, 205 F.2d 644, 645 (2d Cir.1953); *Handelman v. Hustler Magazine, Inc.*, 469 F.Supp. 1048, 1050 n. 4 (S.D.N.Y.1978); R. Sack at 101, 114; *see also* W. Prosser § 111, at 749; 1 E. Seel-

man, *The Law of Libel and Slander in the State of New York* 576–78 (rev. ed. 1964). Whether the complaint alleges facts sufficient to make reasonable the connection between the libel and the plaintiff is a question for the court, *Springer v. Viking Press*, 60 N.Y.2d 916, 917, 470 N.Y.S.2d 579, 580, 458 N.E.2d 1256, 1257 (1983), though of course the ultimate determination whether the libel actually applies to the plaintiff is for the jury, *Brayton*, 205 F.2d at 645; *Handelman*, 469 F.Supp. at 1049. The form of the communication matters not; a drawing or photograph may libel as easily as a writing. *Burton v. Crowell Publishing Co.*, 82 F.2d 154, 155 (2d Cir.1936) (L. Hand, J.); *see Loeb v. Globe Newspaper Co.*, 489 F.Supp. 481, 483, 486 n. 6 (D.Mass.1980):

> [T]he question is whether "the libel designates the plaintiff in such a way as to let those who knew him understand that he was the person meant. It is not necessary that all the world should understand the libel; it is sufficient if those who knew the plaintiff can make out that he is the person meant."

*Fetler v. Houghton Mifflin Co.*, 364 F.2d 650, 651 (2d Cir.1966) (quoting *Miller v. Maxwell*, 16 Wend. 9, 18 (N.Y.Sup.Ct. 1836)); *see Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir.1980). The publication need not have named Mullenmeister, so long as "the allusion is apparent." *Giaimo v. Literary Guild*, 79 A.D.2d 917, 434 N.Y. S.2d 419, 419 (1st Dep't 1981).

■ The allegations of the complaint, taken as true, would suffice to allow a reasonable jury to conclude that the drawing is "of and concerning" Mullenmeister. The complaint alleges that, after eight years of employment with Snap-On, Mullenmeister became Matco's district manager and thus its most prominent representative in the territory in which the newsletter is published. The complaint also alleges that Matco and Snap-On are direct competitors and that under Mullenmeister's leadership Matco has been making significant inroads into Snap-On's business. Plaintiff's name suggests that he is of German

ancestry. The drawing of which he complains appeared in a publication distributed to Snap-On personnel on Long Island. A large number of these people might be expected to know of Mullenmeister as a former colleague, present competitor, or both. Though "all the world" might not understand the libel, a reasonable jury could conclude that the drawing "designates the plaintiff in such a way as to let those who knew him understand that he was the person meant." *Fetler*, 364 F.2d at 651 (quoting *Miller*, 16 Wend. at 18). The allusion to Mullenmeister is readily apparent.

■ The complaint nevertheless fails, because it alleges no facts from which a reasonable jury could conclude that the drawing constituted libel per se. New York's courts have developed a consistent definition of the substantive content of such libel:

> As a general rule, a writing or printed article is libelous per se—that is, actionable without allegation or proof of special damages—" 'if it tends to expose a person to hatred, contempt or aversion, or to induce an evil or unsavory opinion of him in the minds of a substantial number of the community, even though it may impute no moral turpitude to him' ... [or] tends to disparage a person in the way of his office, profession or trade."

*Bordoni v. New York Times Co.*, 400 F.Supp. 1223, 1225 (S.D.N.Y.1975) (Weinfeld, J.) (quoting *Nichols v. Item Publishers, Inc.*, 309 N.Y. 596, 600–01, 132 N.E.2d 860 (1956) (quoting *Mencher v. Chesley*, 297 N.Y. 94, 100, 75 N.E.2d 257 (1947))). Before allowing an action to proceed absent sufficient pleading of special damages, a court must determine whether the libel alleged is "within the group of serious and hence presumptively damaging statements upon which the courts have traditionally allowed suit without allegations designed to establish that the claim is worth litigating." *Sharon*, 575 F.Supp. at 1172.

The complaint implicates both prongs of the definition of libel per se. Mullenmeis-

ter alleges that the drawing "convey[ed] the meaning, that plaintiff was worthy of ridicule and contempt in that he was affiliated with or a member of, or belonged to the Nazi Party or that he was a Nazi." Complaint ¶ 19. Mullenmeister alleges also that the drawing has "greatly damaged and injured" him "in his reputation and standing in his profession." *Id.* ¶ 21. Snap-On counters that readers of this in-house, specialized publication could not reasonably have construed the drawing to charge Mullenmeister with membership in the Nazi party or sympathy with its aims.

■ It is no defense to a suit for libel that the defendant did not mean the offending statement to be taken seriously. But the drawing at issue, like any other allegedly defamatory publication, must be assessed in context. *See, e.g., James v. Gannett Co.*, 40 N.Y.2d 415, 419, 386 N.Y.S.2d 871, 874, 353 N.E.2d 834, 837 (1976). Because of the countervailing interest in free expression, courts must be careful to give a " 'fair', not a 'broad' reading" to allegedly defamatory material. *Drug Research Corp. v. Curtis Publishing Co.*, 7 N.Y.2d 435, 439–441, 199 N.Y.S.2d 33, 36–37, 166 N.E.2d 319, 321–322 (1960). The peculiar setting in which the drawing appeared makes a fair consideration of context particularly crucial here. Imposed on a graphic depiction of an individual, a swastika could conceivably convey three meanings of varying specificity: actual membership in a Nazi or neo-fascist party; sympathy with or adherence to Nazi ideology; or merely epithetic identification of national heritage. In the context in which it appeared, the drawing of which Mullenmeister complains is reasonably susceptible only of the third interpretation. Since such an interpretation would not comprise libel per se, the complaint fails absent allegation and proof of special damages.

The harsh experiences of the Second World War transformed the swastika into the universally recognized symbol of Hitler and his Nazis. While the depth and diversity of political passions make the identification of defamatory inference in political

labels a dangerous task, courts have often found libel per se in false political designations, especially when the affiliation arouses controversy. *See, e.g., Toomey v. Farley,* 2 N.Y.2d 71, 156 N.Y.S.2d 840, 138 N.E.2d 221 (1956) (communism); *Grant v. Reader's Digest Association,* 151 F.2d 733 (2d Cir.1945) (L. Hand, J.), *cert. denied,* 326 U.S. 797, 66 S.Ct. 492, 90 L.Ed. 485 (1946) (same); *Christopher v. American News Co.,* 171 F.2d 275, 279 (7th Cir.1948) (libelous per se to charge that plaintiff was "a Nazi or otherwise an adherent and sponsor of the unpatriotic and subversive theories of white supremacy and racial superiority"); *see also Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 331 n. 4, 94 S.Ct. 2997, 3002 n. 4, 41 L.Ed.2d 789 (1974) (dictum) (accusations that one is "a 'Leninist' and a 'Communist-fronter' ... are generally considered defamatory"); *Holy Spirit Association for the Unification of World Christianity v. Harper & Row, Publishers, Inc.,* 101 Misc.2d 30, 420 N.Y.S.2d 56, 59 (Sup.Ct. N.Y. C'ty 1979) (dictum) (Naziism); *Buckley v. Littell,* 539 F.2d 882, 893 n. 11 (2d Cir.1976) (dictum) (fellow traveler of Nazis or Fascists), *cert. denied,* 429 U.S. 1062, 97 S.Ct. 785, 50 L.Ed.2d 777 (1977). *But see Barton v. Barnett,* 226 F.Supp. 375, 376–77 (D.Miss.1964) ("not libelous per se ... to make a charge of Nazism or Fascism at a time when the country is not at war with a Nazi or Fascist country, and when the charge merely refers to the person's political beliefs or views" (quoting 53 C.J.S. *Libel and Slander* § 31, at 74)). During the period of the Second World War, courts readily found that an accusation that a person associated with the Nazis or sympathized with their cause constituted libel per se, though at that time, of course, the charge would have carried a connotation of disloyalty as well. *See, e.g., Thomas v. Hunt,* 58 N.Y.S.2d 754, 755–56 (Sup.Ct. N.Y. C'ty 1945); *Hartmann v. Winchell,* 187 Misc. 54, 63 N.Y.S.2d 225, 227 (Sup.Ct. N.Y. C'ty 1946); *Derounian v. Stokes,* 168 F.2d 305, 307 (10th Cir.1948) (considering wartime attitudes); 1 E. Seelman at 52 & n. 247B.

No reasonable jury, however, could assume without proof of special damages that readers of the newsletter at issue would construe the drawing to mean that Mullenmeister belonged to any Nazi or neo-fascist political organization. The newsletter carrying the drawing had a wholly commercial purpose, the drawing appeared above a table of sales figures, and the wording accompanying it identified its subject's business affiliation. Even recognizing the strength of association of the swastika with the Nazi cause, the absence of any remotely political dimension to the immediate context of the sales figures or the publication as a whole renders so implausible a construction of the drawing to charge that Mullenmeister belonged to the Nazi party that the drawing cannot be read as libel per se. Thus, harm cannot be presumed; allegation and proof of special damages are necessary.

Depicting someone in connection with a swastika might also convey a charge that the person holds views similar to those held by the Nazi party. *See Buckley v. Littell,* 539 F.2d at 893 n. 11; *Christopher v. American News Co.,* 171 F.2d at 279. "A statement about one's attitude is defamatory if it tends to lower him in the esteem of the community." *Afro-American Publishing Co. v. Jaffe,* 366 F.2d 649, 655 (D.C.Cir. 1966) (en banc). Courts have readily held allegations of racism and anti-Semitism to constitute libel per se, at least when founded on specific incidents. *See id.* (racism); *Schermerhorn v. Rosenberg,* 73 A.D.2d 276, 426 N.Y.S.2d 274, 282 (2d Dep't 1980) (racism); *id.* at 284 (racism and anti-Semitism); *Sweeney v. Schenectady Union Publishing Co.,* 122 F.2d 288, 289 (2d Cir. 1941), *aff'd by an equally divided court,* 316 U.S. 642, 62 S.Ct. 1031, 86 L.Ed. 1727 (1942) (anti-Semitism). Again, however, the wholly commercial context of the drawing would preclude a reasonable jury from construing the drawing to state that Mullenmeister held racist or anti-Semitic views. Standing amidst sales figures and Pac-Man characters, the swastika is too tenuous a basis from which to impute to the publica-

tion a statement that Mullenmeister has Nazi-like sympathies.

A reasonable jury could construe the drawing only as a crude attempt to identify Mullenmeister as the Matco representative, by employing the swastika as a shorthand symbol for German national origin, no doubt with disparaging connotations. But nasty epithets, however vitriolic, are not libelous. R. Sack, at 58–62; W. Prosser, § 111, at 742. And especially when evaluating abusive references such as that here, "[t]he context in which particular [symbols] are used ... is the key to determining whether they are accusations actionable in libel or slander, or merely epithets which, as a matter of law, are not." R. Sack at 62. Here the context makes clear that the swastika denoted no substantive assessment of Mullenmeister's character or political affiliation, but rather conveyed an epithetic comment on his supposed nationality. The complaint's allegation that at a sales meeting the Snap-On employee responsible for the drawing identified the helmeted figure as "[Mullenmeister], the Nazi bastard, .... your enemy," reinforces the conclusion that the drawing was simply an intentionally derogatory but nonsubstantive identification of a business competitor. Complaint ¶ 16. Such an epithet cannot be presumed to have exposed Mullenmeister to so substantial a degree of "hatred, contempt, or aversion," or so seriously to have disparaged his fitness to pursue his trade, as to have damaged him regardless of his inability to assert special damages. The drawing is tasteless, vulgar, and reprehensible. But in context it does not constitute libel per se.

■ Mullenmeister alleges that as a result of the alleged defamation he has lost "substantial sales" in the territory assigned him and suffered "severe physical and mental anguish which has required medical and psychological treatment." Complaint ¶¶ 20–21. These generalized allegations cannot serve as pleadings of special damages. *See, e.g., Korry v. International Telephone & Telegraph Corp.*, 444 F.Supp. 193, 197 (S.D.N.Y.1978). For example, "if the special damage was a loss of customers, ... the persons who ceased to be customers, or who refused to purchase, must be named." *Drug Research Corp.*, 7 N.Y.2d at 441, 199 N.Y.S.2d at 37, 166 N.E.2d at 322 (quoting *Reporters' Association of America v. Sun Printing & Publishing Association*, 186 N.Y. 437, 442, 79 N.E. 710, 711 (1906) (quoting *Linden v. Graham*, 1 Duer 670, 672 (1853))). That sufficient allegations of special damages have not been made supports the strong inference already implicit in the circumstances surrounding the allegedly offensive publication that it was neither meant nor read as a statement concerning plaintiff's associations or beliefs.

Complaint is dismissed for failure to state a claim on which relief may be granted. Fed.R.Civ.Proc. 12(b)(6).

SO ORDERED.