Adjua Abi NAANTAANBUU, Plaintiff,

v.

Reverend Ralph David ABERNATHY, Harper & Row Publishers, Inc., and Danie Bial, Defendants.

No. 90 Civ. 0770 (CSH).

United States District Court,
S.D. New York.

Oct. 1, 1990.

Boyd, Staton & Cave, Brooklyn, N.Y., for plaintiff; Gail W. Boyd, of counsel.

Squadron, Ellenoff, Plesent & Lehrer, New York City, for defendants; Slade R. Metcalf, Dori Ann Hanswirth, of counsel.

## MEMORANDUM OPINION AND ORDER

HAIGHT, District Judge:

This is an action for libel. It arises out of the autobiography of defendant Ralph Abernathy, published by defendant Harper & Row Publishers, Inc. and edited by defendant Daniel Bial. Plaintiff is a resident of Memphis, Tennessee, who claims to have been defamed by a passage in the book. Defendants move to dismiss her complaint under Rule 12(b)(6), F.R.Civ.P., on the ground that as a matter of law, the alleged defamatory words are not "of and concerning" plaintiff.

### Background

The late Rev. Ralph Abernathy was for many years a close associate of Dr. Martin Luther King, Jr. Abernathy wrote an autobiography entitled "And the Walls Came Tumbling Down." The book was edited by defendant Bial and published by defendant Harper and Row in 1989. After plaintiff instituted this action, Abernathy died. The other defendants filed a suggestion of death on the record pursuant to Rule 25(a), and plaintiff has moved to substitute Abernathy's estate as party defendant under Rule 25(a)(1). I grant that motion herewith.

Dr. King was assassinated in Memphis in April, 1968. Plaintiff claims she was defamed by the following passage from Abernathy's book, which describes events occurring on the night before Dr. King's assassination:

A "friend" of Martin's invited us to have steaks at her house, three of us—Martin, Bernard Lee, and me. When we got there, we found three ladies waiting. Martin's friend had provided dinner partners for Bernard and me, and we had a very heavy meal along with some light conversation.

I was exhausted at that stage of the evening, and since I was a happily married man, I was not particularly interested in developing a closer relationship with my companion. Nor was Bernard Lee, as best I recall. I remember trying to keep up my part of the conversation during the meal and then, when the women went back into the kitchen, beating Bernard to an easy chair with an ottoman and falling fast asleep. When I awoke, I saw an empty living room, except for Bernard stretched out on the sofa. Shortly, thereafter, Martin and his friend came out of the bedroom. The other women had long since left. It was after 1:00 a.m.

We drove back through the rain, which hadn't slackened all evening, Solomon Jones leaning forward, occasionally wiping off the windshield, which was clouding up on the inside. We didn't talk and by the time we drove back to the motel parking lot, I had long since fallen asleep again, a gift I have always had that has enabled me to keep going for days at a time, without losing much needed energy. Martin on the other hand, never took catnaps and never ran out of gas. When we arrived at the motel, the level of his energy would again be tested ...

Plaintiff alleges that she is the person referred to in this passage as a " 'friend' of Martin's" and the hostess of the gathering described in the passage. She claims that she has been defamed by the false impression conveyed by the passage that she "had engaged in adulterous behavior and sexual relations with Dr. Martin Luther King on the last night of his life." Complaint, ¶ 8.

Plaintiff alleges that she has been a human rights activist for many years, including civil rights activities in Memphis in 1968. She currently teaches and lectures

in Memphis to Afro–American children about their heritage. She works as a beautician and barber. *Id.*, ¶ 3.

Abernathy's book nowhere refers to plaintiff by name. Nor is Dr. King's "friend and hostess" identified in the book by name, physical description, residence, or occupation.

In these circumstances, defendants contend: "There is no way a reasonable reader of the Book could believe that Ms. Naantaanbuu (or any other specific individual) was the person described as hosting the dinner party for Dr. King some 22 years ago." Affidavit of counsel in support of motion at ¶ 5.

Plaintiff has submitted an affidavit in opposition to defendants' motion. She avers that she has been active in the civil rights movement, with the Southern Christian Leadership Conference and other grassroots movements, for more than 30 years. On April 3, 1968 she was selected, among other volunteers, to pick up Dr. King and his entourage, who were coming to Memphis for a rally planned for that evening and the next day. On the evening of April 3, 1968, plaintiff prepared at her home an evening meal for Dr. King and several members of his staff. That dinner, plaintiff avers, is the one referred to in the Abernathy book. Plaintiff's affidavit at ¶ 5.

Plaintiff further avers that after publication of the Abernathy book, the following transpired:

> I received more than thirty phone calls from various friends and acquaintances advising me that Rev. Abernathy had stated that I was Dr. King's "friend", and that I had sex with him during a dinner held at my home. Although my name was not mentioned, it was clear to the persons who contacted me, that Rev. Abernathy was referring to me in the book. It was also clear to those persons that there was a clear implication that being Dr. King's "friend" implied an ongoing sexual relationship with him. *Id.* at ¶ 9.

Plaintiff includes in her affidavit a list of 64 individuals, 63 with Memphis addresses (one present address is unknown) who plaintiff refers to as "some, but not all of the persons who contacted me and advised me that I was the person referred to in the book.... Each of those persons is willing to testify that they knew that I was the person referred to Rev. Abernathy's book without him having to name me." *Id.* at ¶ 10.

### Discussion

The parties agree that the substantive law of New York controls in this diversity action.

■ The Second Circuit, construing New York law, has held that allegedly defamatory material must be "of and concerning" the plaintiff; this is an essential element of an action for libel. *Geisler v. Petrocelli*, 616 F.2d 636, 637 (2d Cir.1980); *see also Fetler v. Houghton Mifflin Company*, 364 F.2d 650, 651 (2d Cir.1966); *Julian v. American Business Consultants Inc.*, 2 N.Y.2d 1, 17, 155 N.Y.S.2d 1, 18, 137 N.E.2d 1, 13 (1956).

In *Fetler* Judge Feinberg reached all the way back to *Miller v. Maxwell*, 16 Wend. 1, 9, 18 (N.Y.Sup.Ct.1836) for an articulation of the rule. "Stated more fully," Judge Feinberg wrote at 364 F.2d 651, the question is whether:

> the libel designates the plaintiff in such a way as to let those who knew him understand that he was the person meant. It is not necessary that all the world should understand the libel; it is sufficient if those who knew the plaintiff can make out that he is the person meant.

In *Geisler*, plaintiff alleged that she played a recognizable and defamatory role in a work of fiction "concerning the odyssey of a female transsexual athlete through the allegedly corrupt and corrupting world of the women's professional tennis circuit." 616 F.2d at 638. Like the defendants at bar, the defendants in *Geisler* moved to dismiss the complaint under Rule 12(b)(6). They contended that the complaint did not sufficiently aver that the offending material was "of and concerning" the plaintiff.

The court of appeals applied federal pleading requirements under Rule 8 to the complaint, and also referred to the familiar formulation in *Conley v. Gibson*, 355 U.S. 41, 45, 78 S.Ct. 99, 101, 2 L.Ed.2d 80 (1957), that "a complaint should not be dismissed for insufficiency unless it appears to a certainty that plaintiff is entitled to no relief under any state of facts which could be proved in support of the claim." *Id.* at 639, 640. The Second Circuit regarded the complaint as sufficient under Rule 8, "which requires only that plaintiff's charges be set forth in a short and concise statement detailed only to the extent necessary to enable defendant to respond and raise a defense of res judicata if appropriate." *Id.* at 640.

■ The Second Circuit in *Geisler,* having referred to these general principles, went on to observe that in cases such as the one at bar

> ... it has long been the rule that extrinsic evidence is admissible to buttress the claim that the defamation is "of and concerning" the plaintiff and the fact that resort to such evidence may be necessary does not defeat the claim.
>
> *Ibid.*

For that proposition the Second Circuit cited *Brayton v. Crowell–Collier Publishing Co.*, 205 F.2d 644, 645 (2d Cir.1953), where Judge Frank said in affirming a judgment for plaintiff after trial:

> Contrary to defendant's contention, under New York decisions, (a) whether a written defamatory statement applies to a plaintiff is a jury question; (b) this fact may be proved by extrinsic evidence; and (c) the need for the introduction of extrinsic evidence for such a purpose—as distinguished from the use of such evidence to show that injury resulted from apparently innocuous language—does not convert a defamatory statement which would otherwise be actionable without proof of special damage into one for which recovery can be had only upon proof of such damage. (footnote omitted).

■ In *Geisler* the Second Circuit reversed the district court's dismissal of the complaint under Rule 12(b)(6). In view of the admissibility of extrinsic evidence on the issue of whether a defamatory statement applies to the plaintiff, Judge Meskill concluded for the *Geisler* court that plaintiff "is entitled to develop and present a full evidentiary record on the issue." Relevant extrinsic evidence, Judge Meskill continued, would include "affidavits from individuals stating that upon reading or hearing of [the novel] they believed the protagonist to be derived from appellant." *Ibid* (footnote omitted). The Second Circuit concluded *Geisler* with this analysis:

> Had such an additional submission been made by appellant pursuant to the dismissal motions, the trial judge could have construed the application as a motion for summary judgment, Rule 12(b), Fed.R. Civ.P., and evaluated the sufficiency of the evidence according to procedures prescribed under Rule 56, Fed.R.Civ.P., *cf. Hernandez v. Lattimore*, 612 F.2d 61, 64 (2d Cir.1979). The opinion below indicates however, that in the absence of this additional material, the court treated the motions in the manner in which they were styled, and appropriately confined its gaze to the averments of the complaint. Since the pleading upon its face was sufficient, we believe appellant was entitled to present additional material in support of her claims, and their dismissal pursuant to Rule 12(b)(6) was in error. Consequently, the judgment is vacated and the case remanded for further proceedings. *Id.* at 640–41 (footnote omitted).

For the proposition that affidavits of individuals identifying plaintiff with the writing were probative, the *Geisler* court referred at 640 n. 6 to *Fetler, supra. Fetler* arose upon a motion for summary judgment. The district court dismissed an action for libel, based upon a novel, on the ground that the character could not reasonably have been considered a portrayal of the plaintiff. Plaintiff in *Fetler* submitted four affidavits from readers who "recognized plaintiff in the novel." Plaintiff also submitted an affidavit "stating that at least twelve of his students brought him a

review of the book in a local newspaper and asked him if the book was about his family." 364 F.2d at 653 and 653 n. 8. Those affidavits contributed to the court of appeals' conclusion that summary judgment was precluded.

Procedurally the case at bar is closer to *Geisler*, since it arises upon a motion to dismiss under 12(b)(6) rather than a motion for summary judgment under rule 56. However, under the 1946 amendment to Rule 12(b), the court may consider matters outside the pleading and thereupon treat the motion as one for summary judgment. *See 2A Moore's Federal Practice* (2nd Ed. 1989) at 12–76. *Geisler* teaches that the additional submissions need not be made by the defendant seeking dismissal under Rule 12(b)(6); the case expressly sanctions submissions outside the pleading by a plaintiff in an effort to defeat the motion to dismiss on the very ground urged at bar.

Therefore I consider the present plaintiff's affidavit. Defendants argue that the affidavit and the communications from others referred to therein cannot cure deficiencies appearing on the face of the complaint. I do not agree. It is the settled rule in the Second Circuit, construing New York law, that a defamation plaintiff may avail herself of extrinsic evidence to establish a claim that the material was "of and concerning" her. Plaintiff's affidavit is accordingly relevant to a material issue. Her affidavit is also admissible. She has personal knowledge of the declarations made by the individuals who telephoned her following the publication of the Abernathy book, and the declarations themselves are, arguably at least, admissible under Rule 803(1), (2) or (3) of the Federal Rules of Evidence.

Having considered plaintiff's affidavit, defendants' motion is converted to one for summary judgment under Rule 56, and by this Opinion I give defendants the requisite notice of that transformation. Defendants may file any additional submissions within the Rule 56 context within fourteen (14) days of the date of this Order.

I could take a different course and dismiss the complaint under Rule 12(b)(6) only

if more recently decided New York cases compelled the conclusion that the cited Second Circuit cases no longer conformed to New York defamation law. Defendants cite a number of New York cases, but I do not read any of them to permit, let alone compel that conclusion. As Judge Feinberg observed in *Fetler:* "The nub of the matter is that in this area the precise facts of the specific case must be carefully examined . . ." 364 F.2d at 653. The case at bar arises out of a particular set of facts. The passage in question is concerned with a finite and brief period of time: the evening before Dr. King's assassination. It deals with events at only one location: the place where Dr. King had dinner that evening. The element of whether or not this material was "of and concerning" plaintiff depends upon whether those who knew the plaintiff and the attendant circumstances could make out that she was the person referred to in the passage. It would be entirely inappropriate under controlling Second Circuit authority to dismiss plaintiff's suit with prejudice before giving her an opportunity to adduce evidence probative of the very point upon which defendants founded their motion to dismiss.

Defendants' motion to dismiss the complaint under Rule 12(b)(6) is accordingly denied. The Estate of the late Ralph David Abernathy is substituted as a party defendant. The case will proceed under Rule 56, consistent with this Opinion. Defendants may well conclude that the case is not appropriate for a motion for summary judgment.

It is SO ORDERED.